LIPSON NEILSON P.C.
JOSEPH P. GARIN, ESQ.
Nevada Bar No. 6653
LISA J. ZASTROW, ESQ.
Nevada Bar No. 9727
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89144
(702) 382-1500 – Telephone
(702) 382-1512 – Facsimile
jgarin@lipsonneilson.com
lzastrow@lipsonneilson.com

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| CHINA AUTO LOGISTICS, INC., a Nevada Corporation,<br><br>Plaintiff,<br>vs.<br><br>DLA PIPER, LLP, a Maryland Limited Liability Partnership,<br><br>Defendant. | Case No.: 2:20-cv-00646-GMN-EJY<br><br>**DEFENDANT DLA PIPER LLP (US)'S MOTION TO DISMISS** |

Defendant DLA PIPER LLP. (US) ("Defendant" or "DLA Piper"), erroneously sued herein as DLA Piper, LLP, by and through its counsel of record, the law offices of LIPSON NEILSON P.C., hereby submits this Motion to Dismiss based on the following Memorandum of Points and Authorities, any exhibits and pleadings on file herein and any argument as the court may allow at any hearing on the matter.

DATED this 13th day of April, 2020.

LIPSON NEILSON P.C.

By:  /s/*Lisa J. Zastrow*
JOSEPH P. GARIN, ESQ., Nevada Bar No. 6653
LISA J. ZASTROW, ESQ., Nevada Bar No. 9727
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89144

*Attorneys for Defendant*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff China Auto Logistics, Inc. ("CALI") brings a single cause of action against Defendant DLA Piper for legal malpractice, yet CALI has never been a client of DLA Piper. In the absence of an attorney-client relationship there can be no claim against DLA Piper for legal malpractice. This is an obstacle CALI can never overcome, irrespective of its diffuse and maligning Complaint.

CALI attempts to obscure its true relationship with DLA Piper through pretense and a confused narrative. However, contained within the Complaint is a snapshot of the truth; DLA Piper was retained by an Audit Committee to investigate wrongdoing by Members of the Board at CALI after threat of a derivative action against those Members. Thus, not only was DLA Piper *not* representing CALI, DLA Piper was attempting to investigate alleged illegal activity at CALI.

Additionally, DLA Piper is not a resident of Nevada and in no way personally availed itself to Nevada jurisdiction. To the contrary, as alleged in the Complaint, DLA Piper attempted to investigate CALI's business located in Tianjin, China. Because CALI is not now and has never been a client of DLA Piper, and because respectfully, this Court may not exercise personal jurisdiction over DLA Piper in Nevada, this case must be dismissed.

## II. STATEMENT OF FACTS

In evaluating a motion to dismiss a failure to state a claim upon which relief can be granted, the Court reviews the allegations contained in the Complaint. *See* FRCP 12(b)(6); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); see also *Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989). However, this Court need not make absurd conclusions on the face of contradicting allegations. *Id.* Keeping in mind that this Court is not required to accept all conclusory allegations, unreasonable inferences, or unwarranted deductions as true, the following

/.././

/.././

are the allegations as asserted by CALI in the Complaint, *along with warranted deductions and reasonable inferences to rehabilitate CALI's misleading lines*:

Plaintiff CALI is a Corporation organized and existing under the laws of the State of Nevada which prior to the events stated herein was publicly traded on NASDAQ. *See* Complaint attached hereto as **Exhibit 1**, ¶1. Defendant DLA Piper is a Limited Liability Partnership organized and registered under the laws of the State of Maryland which transacts business in Clark County, Nevada. CALI alleges that DLA Piper has appeared as counsel of record on behalf of various clients in Clark County in more than 30 pending and prior court actions. *Id.* ¶2.

CALI asserts that DLA Piper was ultimately retained for the purpose of assisting the Nevada entity, Plaintiff CALI, through its Audit Committee, to investigate allegations that were made in relationship to a lawsuit that was threatened to be, and which was in fact, filed in Nevada. *Id.* ¶3. The overwhelming text in the remainder of the Complaint contradicts this allegation.

Barna Capital Group, Ltd. ("Barna"), a shareholder in CALI, put CALI on notice that it intended to file a shareholder derivative action in Nevada against CALI as a nominal party and against members of CALl's board alleging breach of fiduciary duty and other related torts (the "Barna Complaint"). *Id.* ¶7. The Barna Complaint was turned over to The Audit Committee of CALI. *Id.* ¶8. CALI's Audit Committee ("Audit Committee"), by and through Howard Barth ("Mr. Barth"), retained DLA Piper LLP to conduct an independent investigation. *Id.* ¶ 10.

DLA Piper's attorney-client relationship was with Mr. Barth and the Audit Committee, not CALI, as obscure lines in the Complaint reveal.

Per the terms of the retention, CALI was obligated to pay all fees and costs generated by DLA Piper, although the client was the Audit Committee. *Id.* ¶11. CALI claims that to the extent DLA Piper was retained by the Audit Committee, the ultimate beneficiary of the retention was CALI. *Id.* ¶14.

DLA Piper made an initial request for documents to begin its investigation which, in turn, CALI complied with on May 9 and 14, 2018. *Id.* ¶17. After reviewing the documents provided, DLA Piper determined that it was necessary to complete an onsite collection of electronic

1  materials from CALI's offices and employees located in Tianjin, China. *Id.* ¶18. Thus, as per
2  the engagement by the Audit Committee, DLA Piper sought to investigate CALI.

3  In furtherance of its investigation, DLA Piper "demanded" that CALI's employees in
4  Tianjin provide all computers, electronic devices, servers, email access points, and/or any other
5  company data. *Id.* ¶21.

6  DLA Piper also "demanded" that CALI identify the individual in charge of information
7  technology at CALI who understood how CALI employees communicate, how CALI data is
8  stored and how it is transferred as well as making available any servers, cloud storage or data
9  repositories which store Company data. *Id.* ¶ 22.

10  The "demand" for information "mandated" by DLA Piper raised substantial concerns that
11  DLA Piper was forcing CALI to engage in illegal conduct. *Id.* ¶24. Thus, CALI retained King
12  & Wood Mallesons LLP ("KWM"), one of the first of a few law firms which assisted CALI
13  during DLA Piper's efforts at an investigation. *Id.* ¶30.

14  CALI's counsel, KWM, began communication with DLA Piper. KWM conveyed
15  concerns that DLA Piper was required to address prior to proceeding with its intended onsite
16  data collection and investigation. DLA Piper was informed of these concerns yet "refused" to
17  take any steps to address them. *Id.* ¶31B.

18  CALI retained more counsel in addition to KWM. CALI retained a Tianjin Quangong
19  Law Firm, who issued a legal opinion which was shared with DLA Piper. *Id.* ¶32. DLA Piper
20  did not take the directives of CALI's counsel in Tianjin and proceeded with its efforts to conduct
21  its investigation into CALI as it saw fit. *Id.* ¶33.

22  KWM requested that DLA Piper send a privacy policy. *Id.* ¶34. DLA Piper never
23  furnished a privacy policy or took any measures to address any of the CALI attorney's concerns.
24  *Id.* ¶36.

25  Presumably, if DLA Piper was retained by CALI, CALI could have terminated its
26  engagement with DLA Piper at any time – especially now. CALI did not because CALI was not
27  DLA Piper's client.
28  /./././

1    DLA Piper proceeded with its efforts and "mandated" that the investigation proceed with unbridled access to all personal electronic devices of CALI employees. *Id.* ¶38.

2    According to CALI, these "demands" and "mandates" were made even though employees had not been given assurance that the review would be limited to work-related emails and data, or that the investigation would exclude any personal emails, correspondence, or other private information. Employees were instructed not to delete or modify the data on their personal devices which allegedly exacerbated the situation and created further anxiety for employees. *Id.* ¶39. CALI employees who had been "mandated" to surrender their personal electronic devices were unwilling to do so and a mutiny by CALI employees occurred. Allegedly, this prevented the investigation from proceeding and it also caused great disruption to CALI's ongoing business operations. *Id.* ¶40. Further, the seizure and attempted seizure of CALI employees' personal computers and personal phones without their consent caused numerous employees to file criminal complaints with the Tianjin Public Security Bureau. In response, the Police then came to CALI's offices to investigate the allegations which included interviewing various executives and managers at CALI's Tianjin office. The police report alleged that CALI illegally forced its employees to surrender personal laptops and phones by a foreign company for a foreign investigation. *Id.* ¶41. CALI alleges that in direct response to being investigated by the police for violations that were allegedly caused by the seizure of personal electronic devices mandated by DLA Piper, several members of CALI's Board of Directors and executives who were targeted by the investigation, including the CEO and CFO, resigned their positions. *Id.* ¶42. Concerned with the rapidly deteriorating circumstances, CALI arranged a conference call on July 2, between DLA Piper and CALI's attorney's, K&L Gates LLP and KWM. *Id.* ¶44.

KWM and K&L Gates LLP continued to exchange emails with DLA Piper discussing their concerns with respect to DLA Piper investigation into their client, CALI's, alleged wrongdoing. *Id.* ¶46. KWM concluded that the Audit Committee should consider engaging a "big four" accounting firm to conduct the independent investigation instead of DLA Piper. *Id.* ¶47. Thus, CALI sought to have the Audit Committee terminate DLA Piper and had KWM began facilitating discussion with Ernst & Young. *Id.* ¶48.

If DLA Piper was CALI's client, CALI could have terminated DLA Piper.

While the investigation was stalled, KWM and K&L Gates LLP had each attempted to contact DLA Piper's client, Mr. Barth of the Audit Committee. K&L Gates LLP was rebuffed by DLA Piper which referred to Mr. Barth as "my client" and declined to permit K&L Gates LLP or KWM to contact Mr. Barth without DLA Piper's authorization. *Id.* ¶50.

DLA Piper had similarly contacted KWM to demand that KWM cease communicating with Mr. Barth without DLA Piper's permission. KWM responded to ask whether DLA Piper represented Mr. Barth. DLA Piper responded, "Of course he is my client." *Id.* ¶51.

Allegedly, by cutting off access to Mr. Barth, DLA Piper impeded CALI's ability to comply with SEC filing and other governmental regulatory requirements. *Id.* ¶53.

DLA Piper denied the allegations. *Id.* ¶57.

However, blaming DLA Piper, CALI claims it was unable to comply with SEC filing and other governmental regulatory requirements. CALI claims it was left with no choice but to file its Form 8-K with the US Securities and Exchange Commission which resulted in the NASDAQ halting trading for CALI. *Id.* ¶ 58.

CALI asserts that due to the conduct of DLA Piper, it was unable to achieve compliance with the SEC and was unable to provide a plan for regaining compliance, as of July 24, 2018. On that day, CALI received notification that it would be delisted from NASDAQ. *Id.* ¶60.

On July 31, 2018, DLA Piper withdrew its representation. *Id.* ¶61.

CALI was de-registered from the SEC on January 7, 2019. *Id.* ¶ 62.

CALI blames DLA Piper and does so under the pretext that DLA Piper was its counsel. *Id.* ¶ 63, 64, 65 & 66.

In sum, DLA Piper attempted to investigate unlawful conduct by CALI in China, having been retained by Mr. Barth and the Audit Committee. CALI took great pains to resist the investigation, utilizing at least two law firms to form road blocks when DLA Piper attempted its investigation. While now claiming that DLA Piper was its counsel, for some reason CALI does not claim it ever terminated DLA Piper or had the ability to terminate DLA Piper and moreover makes claims that DLA Piper made "demands" of CALI as if it were truly an adversary,

certainly not a client. Throughout the Complaint CALI reference its actual counsel, admits that DLA Piper denies CALI was its client and makes no allegation of any attorney-client relationship. For these reasons, and for the additional reasons stated herein, CALI cannot maintain a cause of action against DLA Piper for legal malpractice.

### III. LEGAL ARGUMENT

#### A. CALI FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

##### *1. Standard of Review*

Where a plaintiff's complaint fails to state a claim upon which relief may be granted, dismissal is appropriate under FRCP 12(b)(6). In evaluating a motion to dismiss under this standard, courts need not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989). A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, when the alleged facts allow an "obvious alternative explanation," *Iqbal*, 556 U.S. at 682, then the Complaint supports no more than the "mere possibility" of an actionable claim, *Id*. at 679, and must be dismissed. Such determinations are to be based on a court's "judicial experience and common sense." *Id*. unless the credited allegations are enough "to raise a right to relief above the speculative level" and delineate a claim that is "plausible on its face," the Court should dismiss the complaint. *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007); *Iqbal,* 556 U.S. at 678.

The complaint asserts a single cause of action for legal malpractice. The Complaint expressly alleges that … "during the scope of its representation of CALI and its investigation of CALI, the legal services rendered by DLA Piper fell below the standard of care of competent counsel." However, throughout the Complaint CALI makes clear that DLA Piper was never its counsel and thus CALI cannot state a claim upon which relief may be granted.

/./././

      **a.**    **CALI Cannot Maintain a Claim Against DLA Piper For Legal Malpractice as There is No Attorney-Client Relationship Between CALI and DLA Piper**

A plaintiff seeking to establish a legal malpractice claim in Nevada must establish each of the following elements: (1) an attorney-client relationship; (2) a duty owed to the client by the attorney to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity possess in exercising and performing the tasks which they undertake; (3) a breach of that duty; (4) the breach being the proximate cause of the client's damages; and (5) actual loss or damage resulting from the negligence. *See e.g., Mainor v. Nault* 120 Nev. 750, 101 P.3d 308, 324 (Nev. 2004), quoting *Day v. Zubel*, 112 Nev 972, 922 P.2d 536, 538 (Nev. 1996). Thus, an attorney-client relationship is the threshold and necessary element to a legal malpractice claim.

"It is well established that with respect to attorney malpractice…an attorney is not liable to third parties, not in privity, for harm caused by professional negligence." *Decker v Nagel Rice LLC*, 2010 US Dist LEXIS 62042 [SDNY May 28, 2010]. It is the general rule that an attorney's liability for malpractice is limited to some duty owed to a client. . . . Where there is no attorney/client relationship there is no breach or dereliction of duty and therefore no liability." *McGlone* v. *Lacey*, 288 F. Supp. 662, 665-666 (D. S.D. 1968); *see also Kurtenbach* v. *TeKippe*, 260 N.W.2d 53 (Iowa 1977). The attorney-client relationship is a **consensual** one, and generally does not arise without the manifest intent of both parties that it exist. *Id.* (Emphasis added). Nevada law requires no particular set of "formalities" in the creation of the relationship, *Williams v. Waldman,* 108 Nev. 466, 471, 836 P.2d 614 (1992); however, it is generally necessary to the formation of the relationship that the prospective client manifest to an attorney the "prospective client's intent that the attorney provide legal services, and the attorney manifest an intent to do so." Restatement, Third, The Law Governing Lawyers § 14(1)(a)(2000 ed.). In sum, the attorney-client relationship is ordinarily created by mutual assent.

Here, CALI states expressly that the Audit Committee by and through Mr. Barth retained DLA Piper to conduct an independent investigation. *See* Complaint, ¶10. Throughout the Complaint, CALI states that DLA Piper made demands of CALI and its employees for which it

1  strongly resisted. Those statements directly contradict any allegation of "mutual assent" or a "consensual" relationship. CALI claims DLA Piper "demanded" that CALI's employees in Tianjin provide all computers, electronic devices, servers, email access points, and/or any other company data. *Id.* ¶21. DLA Piper also "demanded" that CALI identify the individual in charge of information technology at CALI who understood how CALI employees communicate, how CALI data is stored and how it is transferred as well as making available any servers, cloud storage or data repositories which store Company data. *Id.* ¶22. The "demand" for information "mandated" by DLA Piper raised substantial concerns that DLA Piper was forcing CALI to engage in illegal conduct. *Id.* ¶24. Again, a client-lawyer relationship is ordinarily a consensual one. Du*rante v. Martinez*, No. NNHCV084043410S, 2012 Conn. Super. LEXIS 1861, at *1 (Super. Ct. July 12, 2012). What CALI describes in its Complaint is hardly a "consensual" relationship between it and DLA Piper.

More succinctly stated, the client "must exercise control of the attorney." *Id.* A "subjective believe that an attorney-client relationship exists, standing alone, cannot create such a relationship or a duty of care owed by the attorney." *Id.* "Instead it is the intent and conduct of the parties that controls the question as to whether an attorney-client relationship has been created." *Id.* Clearly CALI had no ability to exercise control over DLA Piper given DLA Piper's "demands." Moreover, CALI expressly states that DLA Piper maintained that CALI was not its client, but that its client was Mr. Barth and the Audit Committee. CALI's counsel, K&L Gates, was rebuffed by DLA Piper which referred to Mr. Barth as "my client" and declined to permit K&L Gates or KWM to contact Mr. Barth without DLA Piper's authorization. *Id.* ¶50.

Again, this Court need not accept allegations in the Complaint that result in unreasonable inferences or unwarranted deductions. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989). It is wholly unreasonable to conclude that CALI had an attorney-client relationship with DLA Piper based on the plain language of CALI's Complaint.

/././

> **b.     CALI Cannot Maintain a Claim Against DLA Piper For Legal Malpractice as CALI Cannot Allege that "But For" DLA Piper's Breach of An Alleged Duty Owed, CALI Sustained Damages**

Had an attorney-client relationship existed between CALI and DLA Piper, CALI cannot alleged any breach of that relationship resulting in damage. In Nevada, the plaintiff must establish that "but for the attorney's negligence, what would have been a favorable outcome was an unfavorable outcome." And the "failure to establish proximate cause requires dismissal, regardless of whether it is demonstrated that the attorney was negligent." *Day v. Zubel*, 112 Nev 972, 922 P.2d 536, 538 (Nev. 1996).

CALI asserts that DLA Piper was retained to investigate the Barna Complaint. Barna put CALI on notice that it intended to file a shareholder derivative action against CALI. *See* Complaint ¶7. The Audit Committee retained DLA Piper to conduct an independent investigation of that alleged derivative action. *Id.* ¶10. The Complaint further details the efforts made by DLA Piper to engage in its investigation. Yet, the damage alleged in the Complaint is a result of CALI's failed SEC filings. In fact, CALI admits its corporate counsel was K&L Gates, not DLA Piper. *Id.* ¶44-51. Specifically, CALI asserts that due to the conduct of DLA Piper, it was unable to achieve compliance with the SEC and was unable to provide a plan for regaining compliance, as of July 24, 2018. On that day, CALI received notification that it would be delisted from NASDAQ. *Id.* ¶60. Yet, CALI does not state what was stated in the filings and how those filings resulted in a lack of compliance. What is it that DLA Piper did, or did not do, that resulted in CALI's delisting from the Nasdaq?

Nasdaq information is a matter of public record for which this Court can take judicial notice. Notably, CALI was delisted for failing to provide a plan for achieving compliance with Nasdaq. CALI failed to provide a public disclosure regarding its financial status and failed to provide the timing for completion of the internal investigation. *See* https://www.globenewswire.com/news-release/2018/07/30/1543800/0/en/China-Auto-Logistics-Inc-Receives-Nasdaq-Delisting Notice.html. It is a colossal leap to assert that DLA Piper's

1   retention by the Audit Committee caused damages related to CALI's corporate filings and
2   compliance with the Nasdaq.

3   Because there was no attorney-client relationship between CALI and DLA Piper, and
4   because DLA Piper did not proximately cause damage to CALI, the Complaint must be
5   dismissed, with prejudice.

### B. THERE IS NO PERSONAL JURISDICTION OVER DLA PIPER

#### 1. *Standard of Review*

It is well established in diversity cases that the "district court's personal jurisdiction over a nonresident defendant is governed by the forum's long-am statute." *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell . Medfit Int'l, Inc*., 982 F.2d 686, 690 (1st Cir. 1993). Nevada's long-arm statute states that a court may exercise "jurisdiction over a party to a civil action on any basis not inconsistent with the Constitution of this State or the Constitution of the United States" Nev. Rev. Stat. Ann. §14.065. For numerous reasons, litigating this matter in the District of Nevada is wholly inconsistent with due process of law and thus violates Nevada's long-arm statute, as discussed below. Therefore, dismissal is appropriate pursuant to FRCP 12(b)(2), as well as FRCP 12(b)(1).

#### a. *Exercise of Jurisdiction Over Defendant is Improper Because There is Neither General nor Specific Personal Jurisdiction*

In order for the district court to hear a case, the court must have personal jurisdiction over the parties and subject of the litigation, and venue must be appropriate. *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1313 (9th Cir. 1985) (explaining that "[j]urisdiction is the power to adjudicate, while venue, which relates to the place where judicial authority may be exercised, is intended for the convenience of the litigants"). Under Federal Rule of Civil Procedure ("FRCP") 12, a court may dismiss a case for lack of personal jurisdiction. *See* FRCP 12(b)(2). In order to exercise personal jurisdiction over a defendant, there must be "an applicable rule or statute which potentially confers jurisdiction." *Vigman*, 764 F.2d at 1313-1314. "In addition, assertion of such jurisdiction must accord with constitutional principles of due process." *Id. International Shoe Co. v. Washington*, 326 U.S. 310 (1945) requires that, for personal jurisdiction to exist, a non-resident

1 defendant have sufficient minimum contacts with the forum state such that maintenance of the lawsuit in the forum state "does not offend traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 320. Due process, according to *International Shoe*, "does not contemplate that a state may make binding a judgment in persona against an individual or corporate defendant with which the state has no contacts, ties, or relations." *Id*. at 319.

Personal jurisdiction can be either general or specific. General jurisdiction exists when a defendant engages in "continuous and systematic general business contacts that approximate physical presence in the forum state." *Schwarzenegger v. Fred Martin Motor* Co., 374 F.3d 797, 801 (9th Cir. 2004). General jurisdiction is an "exacting standard" because "a finding of general jurisdiction permits a defendant to be hauled into court in the forum state to answer for any of its activities anywhere in the world." *Id*.

In evaluating whether specific jurisdiction exists, courts apply a three-prong test requiring that: "(1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Harris Rutsky & Co. Ins. Servs*., 328 F.3d at 1129; see also *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 802 (9th Cir. 2004). If Plaintiff fails to establish the first prong, the inquiry ends and no jurisdiction exists. See *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) ("[Plaintiff's] arguments fail under the first prong. Accordingly, we need not address [the remaining two prongs]." (citation omitted)).

### i.     **This Court Lacks General Jurisdiction Over Defendant**

For general jurisdiction to exist over a nonresident defendant, the defendant must engage in "continuous and systematic general business contacts that approximate physical presence in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004). Courts consider such factors as whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or

is incorporated there. *Gator.Com Corp v. LL Bean, Inc.*, 341 F.3d 1072, 1077 (9th Cir. 2003). A defendant whose contacts are substantial, continuous, and systematic is subject to a court's general jurisdiction even if the suit concerns matters not arising out of his contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)). Continuous and systematic is a fairly high standard in practice. *Young v. Actions Semiconductor Co.,* 386 F. App'x 623, 626 (9th Cir. 2010).

The Complaint provides no basis for general jurisdiction as DLA Piper has no physical presence in Nevada. DLA Piper does not maintain an office in Nevada and does not practice beyond a cursory level in Nevada. *See* Declaration of Mark S. Gurley attached hereto as **Exhibit 2.** As such, the law firm is not subject to general personal jurisdiction in Nevada. *Young*, 386 Fed. Appx. at 626-627 (finding insufficient contact with forum state to support general jurisdiction under similar circumstances).

### ii. This Court Lacks Specific Jurisdiction Over Defendant

To establish specific jurisdiction over a defendant, "(1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable." *Harris Rutsky & Co. Ins. Servs.*, 328 F.3d at 1129. None of these prongs are satisfied here.

#### 1. *No purposeful direction exists.*

In cases involving alleged tortious conduct, courts "most often employ a purposeful direction analysis," which requires that "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix Photo, Inc. v. Brand Techs., Inc*., 647 F.3d 1218, 1228 (9th Cir. 2011). The Complaint does not adequately allege that Defendant purposefully directed its activities to Nevada or residents thereof. To the contrary, each of the allegations herein

1  point to activities taking place outside Nevada as far away as China.  Thus, this matter is wholly
2  inappropriate to be pending in the District of Nevada.

### 2. *The conduct does not arise out of forum-related activities.*

Although Plaintiff cannot demonstrate the first element, even if it could, the Plaintiff did not even attempt to allege that the Defendant engaged in Nevada-related activities.  The second prong of the minimum contacts test requires that the minimum contacts constituting purposeful availment or purposeful direction give rise to the current action.  *Bancroft & Masters, Inc. v. Augusta Nat. Inc*., 223 F.3d 1082, 1088 (9th Cir. 2000) holding modified by *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006).  The requirement is measured in terms of "but for" causation.  *Id.*  Here, the Plaintiff does not allege forum related activities, must less demonstrate "but for" causation.

### 3. *Exercise of jurisdiction would be unreasonable.*

Only after the plaintiff establishes the first two prongs of the minimum contacts test must the defendant come forward with a compelling case that the exercise of jurisdiction would not be reasonable.  *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).  In deciding whether the exercise of jurisdiction is reasonable, district courts consider the following seven factors: 1) the extent of the defendant's purposeful injection into the forum state's affairs; 2) the burden on the defendant of defending in the forum; 3) the extent of conflict with the sovereignty of the defendant's state; 4) the forum state's interest in adjudicating the dispute; 5) the most efficient judicial resolution of the controversy; 6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and 7) the existence of an alternative forum.  *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clement Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003).  All seven factors weigh in favor of dismissal here.

First, the Defendant did not interject into any of Nevada's affairs, at all.  See *Ranza v. Nike, Inc*., 793 F.3d 1059, 1070 (9th Cir. 2015) ("[t]he existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction.").  To the contrary, DLA Piper was retained (not

by this Plaintiff) to investigate the Plaintiffs business in China, not in Nevada.

Second, the Defendant would be greatly burdened if required to defend a lawsuit in Nevada. The financial hardship with having to defend a lawsuit in Nevada is exceptional in this case given we are dealing with individuals in China – not business in a landlocked state next door to Nevada. As for the third and fourth factors, these favor dismissal as well for the reasons already stated.

The only factor arguably weighing against dismissal is the convenience and effective relief for Plaintiff. However, it appears all of the individuals are located in China. "[I]n evaluating the convenience and effectiveness of relief for the plaintiff, we have given little weight to the plaintiff's inconvenience." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir. 1998), holding modified by *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006). On balance, the factors indicate that an exercise of personal jurisdiction over the Defendant in this matter would be unreasonable. Therefore, respectfully the Plaintiff's Complaint should be dismissed for lack of personal jurisdiction.

## IV.   CONCLUSION

There is no attorney-client relationship between CALI and DLA Piper. Even if there were, CALI has not alleged that DLA Piper's conduct proximately resulted in CALI's failures to meet the obligations of the SEC. Both of these issues are fatal to CALI's claims and result in a dismissal, with prejudice. Additionally, should the matter proceed, jurisdiction in Nevada is not proper. For this additional reason, this matter must be dismissed.

DATED this 13th day of April, 2020

LIPSON NEILSON P.C.

By: /s/*Lisa J. Zastrow*
JOSEPH P. GARIN, ESQ.
Nevada Bar No. 6653
LISA J. ZASTROW, ESQ.
Nevada Bar No. 9727
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89144

*Attorneys for Defendant*

*INDEX OF EXHIBITS*

EXHIBIT 1  Complaint

EXHIBIT 2  Declaration of Mark S. Gurley

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 13th day of April, 2020 service of the foregoing **DEFENDANT DLA PIPER LLP (US)'S MOTION TO DISMISS** was made upon each party in the case who is registered as an electronic case filing user with the Clerk, pursuant to Fed. Rule Civ. P. 5(b)(3), and Local Rule 5-4, as follows:

David Mincin, Esq.
MINCIN LAW, PLLC
7465 W. Lake Mead Boulevard, Ste. 100
Las Vegas, NV 89128
Tel. 702-852-1957
dmincin@mincinlaw.com

*Attorney for Plaintiff*

/s/*Nancy Rozan*
An Employee of LIPSON NEILSON P.C.