**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

China Auto Logistics, Inc.,

Plaintiff,

vs.

DLA Piper, LLP,

Defendant.

Case No.: 2:20-cv-00646-GMN-EJY

**ORDER**

Pending before the Court is the Motion to Dismiss, (ECF No. 6), filed by Defendant DLA Piper, LLP ("DLA Piper"). Plaintiff China Auto Logistics, Inc. ("CALI") filed a Response, (ECF No. 10), and DLA Piper filed a Reply, (ECF No. 19). For the reasons discussed below, DLA Piper's Motion to Dismiss is **GRANTED.**

## I. BACKGROUND

This case arises out of DLA Piper's alleged legal malpractice with respect to an internal investigation it conducted for CALI. CALI is a Nevada corporation that facilitates the importation of luxury vehicles from the United States and other countries into China. (Compl. ¶ 1, ECF No. 1-2); (Resp. 2:24–26, ECF No. 10). In 2018, Barna Capital Group, Ltd. ("Barna"), one of CALI's minority shareholders, informed CALI that it planned to file a shareholder derivative lawsuit in Clark County, Nevada against CALI and the members of CALI's Board of Directors ("the Board"). (*Id.* ¶¶ 6–7). CALI brought Barna's complaint to the Board's Audit Committee, which is tasked with assisting the Board in fulfilling its oversight responsibilities over CALI. (*Id.* ¶¶ 8–9). The Audit Committee, through Howard Barth ("Barth"), retained DLA Piper to conduct an independent internal investigation into Barna's claims. (*Id.* ¶¶ 8, 10).

DLA Piper is a Maryland limited liability partnership claiming to be a global law firm with an expertise in handling cross-border legal matters. (*Id.* ¶¶ 2, 4).

During the investigation, DLA Piper engaged in on-site collection of electronic materials from CALI's offices in Tianjin, China. (*Id.* ¶ 19). DLA Piper ordered CALI employees in Tianjin to turn over their personal electronic devices, in contravention of Chinese law, because only Chinese law enforcement agencies can seize electronic devices in this manner. (*Id.* ¶ 24). CALI claims that DLA Piper is not licensed to practice law in China and had not retained a local law firm to assist in complying with Chinese laws and customs. (*Id.* ¶ 17). Further, CALI states that some of the information demanded by DLA Piper would have breached confidentiality agreements that CALI owed to third parties, had it been turned over. (*Id.* ¶ 24).

On May 28, 2018, CALI contacted DLA Piper by email to express concern over DLA Piper's demands throughout the investigation because CALI was exposed to potential criminal and civil liabilities. (*Id.* ¶ 28). However, CALI claims that DLA Piper refused to address CALI's concerns and continued the investigation without any procedural modifications. (*Id.* ¶ 29). The Chinese subsidiary of CALI then hired the law firm King & Wood Mallesons LLP ("KWM") to facilitate communication with DLA Piper and address CALI's concerns about the investigation. (*Id.* ¶ 30). DLA Piper allegedly still refused to adjust the scope of its investigation to comply with Chinese laws and customs. (*Id.* ¶¶ 30–37).

As a result of DLA Piper's conduct, CALI claims that its Tianjin employees mutinied and refused to surrender their personal electronic devices, which prevented the investigation from proceeding and disrupted CALI's business operations. (*Id.* ¶ 40). CALI's employees subsequently filed criminal complaints with the Tianjin Public Security Bureau, prompting the police to investigate the allegations at CALI's offices. (*Id.* ¶ 41). CALI further alleges that as a direct result of this police investigation, several members of the Board and other executives

targeted by the investigation, such as the Chief Executive Officer and Chief Financial Officer, resigned. (*Id.* ¶ 42).

CALI claims that it again tried to address its concerns with DLA Piper by enlisting both KWM and K&L Gates LLP to discuss DLA Piper's conduct during the investigation, possible terms for continuing the investigation, whether DLA Piper was fit to continue the investigation, and whether CALI should hire a "big four" accounting firm, such as Ernst & Young, to finish the investigation. (*Id.* ¶¶ 44–49). KWM and K&L Gates LLP also tried reaching out to Barth, but DLA Piper prevented either law firm from contacting him, or other members of the Audit Committee, without permission; DLA Piper claimed that its client was Barth and the Audit Committee, not CALI. (*Id.* ¶ 50).

On July 11, 2018, CALI held a conference call with the Audit Committee, KWM, K&L Gates LLP, and DLA Piper, but they were still unable to reach a resolution concerning the continuation of the investigation. (*Id.* ¶¶ 55–57). Because of the chaos caused by DLA Piper's stalled investigation, the police activity at CALI's Tianjin offices, and subsequent resignations, CALI claims that it failed to meet various SEC filing deadlines and other governmental regulatory requirements, which led to CALI being de-listed as a publicly traded company in the United States. (*Id.* ¶ 43, 58).

On July 17, 2018, CALI filed Form 8-K with the SEC, prompting the NASDAQ to place a trading halt on CALI. (*Id.*). On July 18, 2018, Barth resigned from the Audit Committee and the Board. (*Id.* ¶ 59). On July 24, 2018, CALI received notification that it would be de-listed from the NASDAQ because it was unable to provide a plan for regaining compliance with the SEC. (*Id.* ¶ 60). On July 31, 2018, DLA Piper withdrew its representation. (*Id.* ¶ 61).

CALI brought a claim of legal malpractice against DLA Piper in Clark County District Court. (Pet. Removal, ECF No. 1). DLA Piper removed to this Court based on diversity of

citizenship and now moves to dismiss CALI's complaint for lack of personal jurisdiction and failure to state a claim. (*See generally* Mot. Dismiss ("MTD"), ECF No. 6).

## II. LEGAL STANDARD

### A. Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) permits a defendant, by way of motion, to assert the defense that a court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). When a 12(b)(2) motion is based on written materials, rather than an evidentiary hearing, the plaintiff need only establish a prima facie showing of jurisdictional facts to withstand the motion to dismiss. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). District courts take the uncontroverted allegations in the complaint as true. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

When no federal statute applies to the determination of personal jurisdiction, the law of the state in which the district court sits applies. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Because Nevada's long-arm statute reaches the outer limits of federal constitutional due process, courts in Nevada need only assess constitutional principles of due process when determining personal jurisdiction. *See* Nev. Rev. Stat. § 14.065; *Galatz v. Eighth Judicial Dist. Court*, 683 P.2d 26, 28 (Nev. 1984).

Due process requires that a non-resident defendant have minimum contacts with the forum such that the "maintenance of the suit will not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts can give rise to either general or specific jurisdiction. *LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000). General jurisdiction exists where a defendant maintains "continuous and systematic" ties with the forum state, even if those ties are unrelated to the cause of action. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984)). Specific

jurisdiction exists where claims "arise out of" or "relate to" the contacts with the forum, even if those contacts are "isolated or sporadic." *Id.*

**B. Failure to State a Claim**

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as a factual allegation are insufficient. Twombly, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). "However, material which is properly submitted as part of the complaint may be considered." Id. Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. E.g., Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994). On a motion to dismiss, a court may also take judicial notice of "matters of public record." Mack v. South Bay Beer Distrib., 798 F.2d 1279, 1282 (9th Cir.

1986). Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962).

## III. DISCUSSION

In its Motion, DLA Piper claims that this Court has neither general nor specific personal jurisdiction over it because DLA Piper is not a resident of Nevada and has not purposefully directed its conduct toward the state. (MTD 2:14–18). Further, even if the Court may assert personal jurisdiction over DLA Piper, DLA Piper claims that CALI has failed to state a claim under which relief can be granted. (*Id.* 7:6–7). DLA Piper alleges that it never had an attorney-client relationship with CALI and that DLA Piper's actions did not proximately cause CALI's harm, both of which are required elements for a legal malpractice claim. (*Id.* 8:1–3, 10:1–4). The Court will address each argument in turn.

### A. Personal Jurisdiction

#### 1. General Personal Jurisdiction

Courts have general personal jurisdiction over parties at home in the forum state. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). "For an individual, the 'paradigm forum' for the exercise of general jurisdiction is the 'individual's domicile,' or, for corporations, 'an equivalent place, one in which the corporation is fairly regarded as at home.'" *Bristol-Meyers*

*Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1776 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). When determining whether a corporation is "at home" in a state, "the place of incorporation and principal place of business are paradigm . . . bases for general jurisdiction." *See Daimler AG*, 571 U.S. at 137 (quoting *Goodyear Dunlop*, 564 U.S. at 919).

Here, CALI asserts that this Court has general personal jurisdiction over DLA Piper because DLA Piper has represented several clients in Nevada courts, has participated in Nevada transactions exceeding billions of dollars for Nevada clients, and has eleven attorneys barred in Nevada. (Resp. 9:10–10:5). However, these connections are not continuous or systematic enough to establish that DLA Piper is "at home" in Nevada, especially when considering that DLA Piper is neither registered in Nevada, nor has its principal place of business in Nevada. *See, e.g., In re Packaged Food Products Antitrust Litigation*, 338 F.Supp.3d 1118, n.14 (S.D. Cal. 2018) (applying *Diamler*'s "at home" test for corporations to limited liability partnerships). In fact, the Complaint alleges that DLA Piper is organized and registered in the state of Maryland. (Compl. ¶ 2). DLA Piper's principal place of business is not established in the Complaint, but it does not appear to be Nevada, because the affidavit submitted with the present Motion indicates that DLA Piper maintains no offices, employees, or property in Nevada. (Gurley Decl. ¶¶ 3–8, ECF No. 6-2).

Because the "paradigm [] bases for general jurisdiction" have not been met with respect to DLA Piper in Nevada, CALI must present substantial evidence to establish that DLA Piper is at home in the state. *See Daimler AG*, 571 U.S. at 137 (quoting *Goodyear Dunlop*, 564 U.S. at 919). However, CALI's claim that DLA Piper has been involved in some Nevada based cases and transactions simply establishes that DLA Piper conducts some business in Nevada, but not that it is at home in the forum state. *See Couvillier v. Dillingham & Associates*, No. 2:14-cv-00482-RCJ-NJK, 2014 WL 3666694, at *4 (D. Nev. July 23, 2014) ("There is no general

personal jurisdiction over Dillingham, a California law firm, in Nevada, because Dillingham is not alleged to be 'at home' in Nevada, but is only alleged to 'do business' in Nevada, however extensively."). Further, the fact that 11 out of DLA Piper's 1,569 attorneys are barred in Nevada is not strong enough evidence to indicate that the firm is at home in the state. *See Cromeans v. Morgan Keegan & Co.*, No. 2:12-cv-04269-NKL, 2014 WL 1375038, at *12 (D. Mo. Apr. 8, 2014) (finding that the Court did not have general personal jurisdiction over a firm with only 4 out of 800 practicing attorneys barred in Missouri).[1] Accordingly, this Court does not have general personal jurisdiction over DLA Piper.

**2. Specific Personal Jurisdiction**

Specific personal jurisdiction refers to "jurisdiction based on the relationship between the defendant's forum contacts and the plaintiff's claims." *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007). Personal jurisdiction must arise out of "contacts that the defendant *himself* creates with the forum State." *Waldon v. Fiore*, 571 U.S. 277, 284 (2014) (internal quotations omitted). Further, personal jurisdiction cannot be established from the conduct of a plaintiff or third parties within the forum. *Id.* In other words, "the plaintiff cannot be the only link between the defendant and the forum." *Id.* at 285.

Courts utilize a three-prong test to analyze whether the assertion of specific personal jurisdiction in a given forum is proper:

> (1) The non-resident defendant must [a] purposefully direct his activities or consummate some transaction with the forum or resident thereof; or [b] perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws;

---

[1] CALI claims in an affidavit that DLA Piper has eleven attorneys barred in Nevada, although DLA Piper disputes this fact. (*See* Mincin Decl. ¶ 6, ECF No. 10-1); (Reply 6:10–11, ECF No. 19). In its own affidavit, provided with the present Motion, DLA Piper asserts that it only has four attorneys barred in Nevada. (Gurley Decl. ¶ 5, ECF No. 6-2). However, "conflicts between the facts contained in parties' affidavits must be resolved in [the plaintiff's favor] for purposes of deciding whether a prima facie case of personal jurisdiction exists." *Am. Telephone & Telegraph Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

(2) the claim must be one which arises out of or relates to the defendant's forum related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenneger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

"The plaintiff bears the burden of satisfying the first two prongs of the test." *Menken*, 503 F.3d at 1057. If the plaintiff satisfies the first two prongs, the burden will shift to the defendant to show that exercising jurisdiction would be unreasonable. *Id.* However, "[i]f the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.*

Here, CALI claims that the Court has specific personal jurisdiction over DLA Piper because DLA Piper was retained to investigate CALI, a resident of Nevada. (Resp. 10:22–24). Further, DLA Piper's investigation was "relat[ed] to litigation that was threatened to be and ultimately [was] filed in Nevada courts." (*Id.*). To counter, DLA Piper asserts that it never purposefully directed its activities toward Nevada because the allegations in the Complaint concern activities that took place during DLA Piper's investigation of CALI in Tianjin, China, not Nevada. (MTD 13:23–14:2).

The Court finds the Nevada Supreme Court's decision in *Fulbright & Jaworski v. Eighth Jud. Dist. Ct.*, 131 Nev. 30 (2015), to be instructive in this matter. In *Fulbright*, a Texas law firm represented a Nevada resident in a Texas matter. *See Fulbright*, 131 Nev. at 32–35. The Nevada resident subsequently brought an action for breach of fiduciary duty against the Texas law firm in a Nevada court. *Id.* at 34–35. The court determined that "representing a Nevada client in an out-of-state matter does not necessarily subject an out-of-state law firm to personal jurisdiction." *Id.* at 38. If an out-of-state firm solicited its business in Nevada, then

representing a Nevada client in an out-of-state matter may subject the out-of-state firm to Nevada's personal jurisdiction. *Id*. at 40.

In *Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990), the Ninth Circuit also identified a situation where a court has specific personal jurisdiction over an out-of-state law firm that represented an in-state client for an out-of-state matter. In *Sher*, a California client brought a legal malpractice action in a California court against a Florida partnership that had represented the client in a Florida criminal matter. *See Sher*, 911 F.2d at 1360. The Court determined that the execution of a retainer agreement, as well as mail and telephone communications, between the parties was not enough to establish the purposeful availment prong of the specific personal jurisdiction analysis. *Sher*, 911 F.2d at 1363 ("We find these contacts too attenuated to create a 'substantial connection' with California."). However, the additional fact that the client executed a deed of trust and promissory note in the partnership's favor, encumbering the client's California residence, did establish purposeful availment. *Id.* ("The execution of the deed 'contemplated [significant] future consequences' in California . . .; judgment on the deed would require the application of California law; enforcement of such a judgment would require the action of a California court.").

In the present case, CALI implies that DLA Piper was retained to represent it in a Nevada-based matter by stating that the investigation was related to a shareholder derivative lawsuit that was eventually filed against CALI in Nevada. (*See* Resp. 10:22–24); (Compl ¶ 7). However, the Complaint does not allege that DLA Piper ever represented CALI or was CALI's counsel of record in this, or any, Nevada matter; the Complaint does not even indicate when the alleged Nevada matter was filed. In actuality, the Complaint alleges that DLA Piper investigated CALI's Chinese subsidiary in Tianjin, China. (*See* Compl. ¶¶ 19–39). This presents a similar situation to the one in *Fulbright*: an out-of-state law firm was hired by a Nevada resident to conduct an out-of-state investigation. Because the Complaint introduces no

allegations or evidence that DLA Piper explicitly solicited Nevada residents,[2] the mere fact that DLA Piper was retained by a Nevada corporation does not establish specific personal jurisdiction. *See Fulbright*, 131 Nev. at 38–40. Further, while the Complaint does allege that CALI and DLA Piper signed a retainer agreement and engaged in communication by phone and email, these contacts alone are not enough to establish that DLA Piper purposefully directed its activities toward Nevada. *See Sher*, 911 F.2d at 1363; (Compl. ¶¶ 28, 55–57); (Engagement Letter, Ex. 1 to Reply, ECF No. 19-1).

Accordingly, CALI has not satisfied the first prong in the analysis of whether the assertion of specific personal jurisdiction in this Court is proper, and thus, has not met its burden to show that this Court may exercise specific personal jurisdiction over DLA Piper. Because CALI has established neither general nor specific personal jurisdiction, the Court dismisses CALI's claims against DLA Piper without prejudice. *See Freeman v. Oakland Unified Sch. Dist.*, 179 F.3d 846, 847 (9th Cir. 1999) (explaining that dismissals for lack of jurisdiction "should be . . . without prejudice so that a plaintiff may reassert his claims in a competent court.") (internal citations omitted).

**B. Failure to State a Claim**

Because this Court does not have personal jurisdiction over DLA Piper, and therefore dismisses the case, the Court need not discuss DLA Piper's other arguments for dismissal based on Federal Rule of Civil Procedure 12(b)(6).

//

//

//

---

[2] In its Response to DLA Piper's Motion to Dismiss, CALI submitted an affidavit including exhibits purporting to establish that CALI advertised its services to Nevada residents. (Mincin Decl. ¶ 9, Ex. 1 to Resp., ECF No. 10-1). However, these exhibits simply indicate that DLA Piper attended some events in Nevada, and do not demonstrate that DLA Piper was specifically soliciting Nevada clients. (*Id.*).

**IV. CONCLUSION**

**IT IS HEREBY ORDERED** that DLA Piper's Motion to Dismiss, (ECF No. 6), is **GRANTED**, and Plaintiff's claims against Defendant are **DISMISSED without prejudice**.

The Clerk of the Court shall enter judgment accordingly.

**DATED** this __3__ day of March, 2021.

___________________________________
Gloria M. Navarro, Chief Judge
United States District Court